## Buckner, et al. v. Kelley, et al.

(Decided January 30, 1913.)

### Appeal from Boone Circuit Court.

1. **Infants—Real Estate of—Sale of Remainder Interest for Repairs and Improvements not Allowed.**—Where real estate was devised to the father for life, with remainder to his children, the court had no jurisdiction, in a suit by a creditor of the father from whom money was borrowed to make repairs and improvements on the property, to order a sale of the remainder interest of the infants. All that could be subjected to the payment of the debt was the estate of the life tenant, and the fact that the life tenant, and also the trustee appointed by the will to take charge of the estate for the benefit of the life tenant and the remainderman, with authority to pay to the life tenant the income, executed a mortgage to the creditor, did not enlarge his rights.

2. **Infants—Real Estate of—Sale or Mortgage of Under Section 498 of the Code.**—Under section 498 of the code, the circuit court has jurisdiction to direct the trustee to sell or mortgage infants' land, but in all such actions it must be averred and proved that such sale or mortgage would be beneficial, and the proceeds of the sale, if a sale is made, must be paid into court for re-investment, and the proceeds realized from a mortgage, if one is directed to be made, must be paid into court and appropriated by the court in the construction of permanent improvements.

S. W. TOLIN and A. M. ROGERS, for appellants.

W. A. BYRNE and D. E. CASTLEMAN, for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This appeal is prosecuted by the infant children of John C. Buckner, who is also their statutory guardian, for the purpose of having set aside a judgment ordering a sale of real estate in which they had an estate in remainder. To understand the grounds relied on for reversal it will be necessary to give a history of the case.

In 1888 the will of Mrs. Belle Buckner, the mother of John C. Buckner, was probated, and in the second clause of her will she gave to her son, John C. Buckner, for life the use, proceeds, rents, profits and interest of all property that she owned, with the fee in remainder to his children. In the third clause she appointed A. P. Sanford as trustee for her son, and invested him with full power and authority to take charge of her estate and use and manage the same for the best interest of her son, directing him to pay over to her son what remained of the rents and interest after paying taxes and the cost of necessary repairs; further providing that:

"If the said trustee shall think it best to sell any or all of the real estate left by me, I hereby give him full power and authority to sell and convey the same and re-invest the proceeds of said sale or sales in other real estate, or loan out the money at interest, taking mortgage security, as hereinbefore stated, whichever he may think best for my said son. Or, if he believes it wise and judicious to do so, he may invest any other money and choses in action left by me at my death in real estate; but nothing in this, the third clause of my will, shall have the effect, or be so construed as to change in any respect the manner in which I have disposed of my entire estate in the second clause of this my last will and testament."

A. P. Sanford, and Buckner and his wife, borrowed from Ben Kelley $600, and executed to him their note for this amount. At the same time they gave him a mortgage to secure the payment of this note on about three acres of land that was devised by Mrs. Buckner in the will before noticed. Kelley brought suit on this note against Buckner and his wife, A. P. Sanford, and the three infant children of Buckner, and asked a personal judgment against Buckner and Sanford, for an enforcement of the mortgage lien and a sale of so much of the property as might be necessary to pay the note.

To this suit Sanford and Buckner filed separate answers and cross petitions. In each of these pleadings it was set up in substance that it would be for the best interest of all parties concerned, including the infant children, if enough of the mortgaged property, which was alleged to be susceptible of division, should be sold to pay the debt. The pleadings were made cross petitions against the infants, and the pleading of Sanford further

set up that the money was borrowed for the purpose of making necessary improvements on the trust property, and all of it was used in this way, and its use was necessary to provide a home for Buckner and his children.

After these pleadings were filed the deposition of Sanford was taken, and he testified that the property was susceptible of advantageous division and that the money borrowed from Kelley was used to pay a debt due one Trimble, from whom money had been obtained, to make necessary repairs upon the property. It also appears from this deposition that $140 of the money obtained from Trimble was used to send John C. Buckner to a Keeley Institute, and some of it was used for the purpose of paying taxes.

In due time a judgment was rendered directing the sale of so much of the property as might be necessary to pay the debt. After this judgment was entered, but before any sale was made under it, Sanford filed an amended answer and cross petition in which he set up that, pending this suit, another child had been born to John C. Buckner and he asked that the judgment be set aside and the infant be made a party to the action, and the judgment was set aside and a summons issued against the infant and executed on his father, and the attorney who had theretofore been appointed guardian ad litem for the other infants was appointed guardian ad litem for this infant.

Thereupon the guardian ad litem filed a report stating that he could make no defense, and the case was re-submitted and the judgment re-entered. A sale was made under this judgment, and the whole of the real estate described in the petition and mortgage, and which was appraised at $2,000, was purchased at the sale by Kelley for his debt, interest and costs, then amounting to $787. Thereafter on motion of the guardian ad litem the sale was set aside because the purchase price was grossly inadequate. After this judgment had been set aside Buckner filed an amended answer in which he averred that the property was not susceptible of division, and he asked for a sale of the whole of it, and that out of the proceeds the debt of Kelley be paid and the remainder be turned over to Sanford as trustee.

Sanford also filed an amended answer and cross petition in which he averred that the property could not be divided without injuring its value, and he joined in

asking for a sale of the whole of it and the distribution of the proceeds in the manner indicated in the answer of Buckner. On this pleading summons was issued against the infants and executed on their father, Buckner, and an order of court was made appointing a guardian ad litem for them.

The only evidence of any kind or character offered in support of the amended pleadings asking a sale of the whole property was the affidavit of Sanford, which simply stated that he believed it would be for the best interest of Buckner and the infants if the property should be sold as a whole. The guardian ad litem also filed a report saying that he could make no defense. Thereupon another judgment was entered directing a sale of the entire property, and under this judgment, after the property had been appraised at $2,200, the whole of it was sold to Kelley for the amount of his debt, interest and costs, which was then $852.

Following the report of the sale of the property under this judgment, the four infant children, by their statutory guardian, entered a motion to set the judgment aside, but this motion was overruled and a deed ordered to be made to the purchaser. From the order overruling the motion to set aside this judgment as erroneous, if not void, this appeal is prosecuted.

The trustee, under the will, had the right to sell the estate for re-investment, but not to pay expenses in making repairs on the property or in giving medical treatment to John C. Buckner, the life tenant, and yet the judgment directed the interest of the infants to be sold for this purpose.

Section 498 of the Civil Code provides for the sale of property held as this property was, but the record shows that no attempt was made to observe any of the provisions of this section, and we presume this section was not consulted in taking the steps or any of them that preceded or included the judgment ordering a sale. This section provides in substance that when lands are held in trust during the life of another, with remainder over to a class of persons, it shall be competent for the circuit court of the county in which such land is situated, in an action to which all persons having an interest in the land are parties, to direct the trustee to sell or mortgage the land, but in all such actions it must be averred and proved that such sale or mortgage would be beneficial to all parties concerned.

It is further provided that the proceeds of sale shall be paid into court and shall be reinvested by the court after paying costs and taxes, in other property to be conveyed and held subject to the same limitation and trusts as the land sold was. It is further provided that the proceeds of all mortgages of such land shall be paid into court and be appropriated by the court in the construction of permanent improvements.

Under this section Sanford as trustee in a proceeding instituted for that purpose might, with the consent and direction of the court, have mortgaged the land and obtained money with which to make necessary permanent improvements, and he might also, with the consent of the court, have made a sale of the land for the purpose of reinvestment. Burge v. Fidelity Trust & Safety Vault Co., 112 Ky., 683; Craig v. Wilcox, 94 Ky., 484. But neither under the will nor under section 498 of the Code, or any other section of the Code, was the court authorized to order a sale of the remainder interest of the infants for the purpose of paying a debt created by the life tenant for the purpose of making repairs, or any other purpose, and we have frequently laid it down that the real estate of infants cannot be sold unless express authority to order the sale is found in some statutory provision. Elliott v. Fowler, 112 Ky., 377; Carpenter v. Moorelock, 151 Ky., 506.

The trustee and the life tenant might have mortgaged the life estate for the purpose of paying the debt, and the court might have ordered a sale of the life estate for this purpose, but this is all. Having this view of the case, it does not seem necessary to point out the several other errors that would justify a reversal of the judgment.

Wherefore, the judgment is reversed, with direction to set aside the sale, and dismiss the petition and cross petitions in so far as they seek to subject the interest of the infants.